**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| GREAT WEST CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CA 2:12-00623-KD-N |
| | ) | |
| FIRSTFLEET, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

On October 1, 2012, pursuant to 28 U.S.C. § 2201, *et seq*., Plaintiff Great West Casualty Company, a Nebraska corporation, filed a complaint for declaratory judgment (Doc. 1) against RBX, Inc. d/b/a RBX Transportation, Inc., a Missouri corporation and Great West's insured; FirstFleet, Inc., a Tennessee corporation; Tennessee American Recycling, LLC, a Georgia LLC, with its principal place of business in Tennessee; and Earl Fergerson, a Missouri citizen (*see id.*, ¶¶ 1-5).[1]

FirstFleet has filed a motion to dismiss or, alternatively, stay (Doc. 30), which is now before the undersigned United States Magistrate Judge, pursuant to to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2, for entry of a report and

---

[1] The citizenship of the parties is important because, as Great West acknowledged in its complaint (*see id.*, ¶ 7), diversity, under 28 U.S.C. § 1332, is the sole jurisdictional hook. The Federal Declaratory Judgment Act, when enacted, did not expand the jurisdiction of the federal courts and, thus, does not provide an independent basis for federal jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Since "[t]he Act is procedural[, a plaintiff's] allegations must otherwise show an independent basis for the Court's jurisdiction." *Bethel v. Mack*, Civil Action No. 10-0099-KD-M, 2010 WL 2232155, at *3 (S.D. Ala. May 14, 2010) (citing *Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003)), *report and recommendation adopted*, 2010 WL 2232153 (S.D. Ala. June 3, 2010).

recommendation. Both Plaintiff Great West and Defendant RBX, ostensibly adverse to Great West, filed oppositions to FirstFleet's motion (*see* Docs. 37 and 39).[2] RBX's opposition prompted the undersigned to issue an order inquiring, first, whether RBX's and Great West's interests were aligned and, if so, whether RBX should be realigned as a party plaintiff; and, second, "whether this action can be adjudicated without addressing the existence and enforceability *vel non* of an indemnity agreement between FirstFleet[ ] and RBX." (Doc. 45). Great West, RBX, and FirstFleet have all filed responses to the undersigned's order.[3] (*See* Docs. 54, 55, and 60.)

After consideration of the pleadings and the parties' briefing, the undersigned is satisfied that complete diversity exists and, therefore, this Court has subject matter jurisdiction. That being the case, for the reasons discussed below, it is **RECOMMENDED** that FirstFleet's motion (Doc. 30) be **GRANTED IN PART AND DENIED IN PART** as set out herein.

## I. Background

The underlying action, to which Great West is not a party, concerns an accident that occurred on August 11, 2010 in Pine Hill, Alabama. Based on the allegations of the complaint, on that day, Fergerson was operating under a contract with RBX to transport one of its trailers improperly loaded (by Tennessee American) with bales of scrap cardboard to International Paper. After being

---

[2] FirstFleet also filed a reply in support of its motion (Doc. 40).

[3] While those three parties were ordered to file responses, all parties were afforded the opportunity to respond (*see id.* at 2); however, no other responses were filed.

instructed by First Fleet regarding the unloading of the trailer, Fergerson was injured when he opened the trailer door and a bale of corrugated cardboard fell, striking the door, and knocking him to the ground. Fergerson and his wife filed a lawsuit in the Circuit Court of Wilcox County, Alabama on August 11, 2011, asserting negligence claims against all defendants. FirstFleet timely removed that case to this Court on the basis of diversity, alleging that Fergerson and his wife fraudulently joined RBX to defeat this Court's jurisdiction. Specifically, FirstFleet argues that, under either Alabama or Missouri law, "it is clear that the remedies available against RBX, under these circumstances, are limited to actions for workers' compensation benefits." (CA 2:11-00549-KD-C, Doc. 1, notice of removal, ¶ 4.) Magistrate Judge Cassady disagreed, finding that FirstFleet failed to meet its burden to prove fraudulent joinder by showing there was no possibility that an Alabama state court would find that the Fergersons' complaint states a claim against RBX, and recommended that the case be remanded. Judge DuBose concurred. (*See* CA 2:11-00549-KD-C, Doc. 31, 32, 33 (report & recommendation, order adopting report & recommendation, to which no objections were filed, and entering judgment, remanding case).)[4]

The present declaratory judgment action concerns a single policy issued by Great West to RBX (Policy No. GWP31400F), which provided Commercial Auto, Inland Marine, Cargo, and General Liability coverage, effective August 1, 2010 to

---

[4] *See also Fergerson v. Tennessee Am. Recycling, LLC*, No. CA 2:11–549–KD–C, 2011 WL 6670191 (S.D. Ala. Dec. 2, 2011), *report & recommendation adopted*, 2011 WL 6704015 (S.D. Ala. Dec. 21, 2011)).

August 1, 2011. (Doc. 1, ¶¶ 16, 17.) International Paper was a named additional insured under the policy, and Great West is also providing International Paper a defense in the state-court action under a reservation of rights. (*Id.*, ¶ 18.) Great West has, however, denied coverage to FirstFleet, which tendered defense of the state-court action to Great West on December 30, 2011 (*see id.*, ¶¶ 23-26), and through this lawsuit, Great West seeks declarations that FirstFleet has no coverage, or no potential coverage, under the policy and, accordingly, "Great West owes no duty to defend or indemnify FirstFleet with respect to the [state-court] action." (*Id.*, ¶¶ 22-33.)

In its motion to dismiss or, alternatively, stay, FirstFleet informs the Court that its demand on Great West was based, in part, on an indemnity provision in its transportation agreement with RBX, which required RBX to meet certain insurance obligations, and which Great West has found to be unenforceable. (*See* Docs. 30 at 2-3; 30-1, Dec. 30, 2011 demand letter; 30-2, Feb. 15, 2012 response; 30-3, Feb. 29, 2012 reply.) Great West's refusal to defend and indemnify FirstFleet led FirstFleet to file, on March 15, 2012, a cross-claim in the state-court action against RBX—asserting claims for breach of contract, negligence, common law indemnity, and declaratory judgment—which RBX answered on April 16, 2012, and which remains pending. (*See* Docs. 30 at 3-4; 30-4, cross-claim; 30-5, answer to cross-claim.)

## II. <u>Analysis</u>

Before proceeding to FirstFleet's motion to dismiss or, alternatively, stay, the undersigned must first address this Court's jurisdiction. *See Grupo Dataflux v.*

*Atlas Global Group, L.P.*, 541 U.S. 567, 593 (2004) (Ginsburg, J., dissenting) ("[B]y whatever route a case arrives in federal court, it is the obligation of both district court and counsel to be alert to jurisdictional requirements." (citing, among other cases, *United Republic Ins. Co., in Receivership v. Chase Manhattan Bank*, 315 F.3d 168, 170-171 (2d Cir. 2003) ("We have . . . urged counsel and district courts to treat subject matter jurisdiction as a threshold issue for resolution . . . ."); *United States v. Southern Cal. Edison Co.*, 300 F. Supp. 2d 964, 972 (E.D. Cal. 2004) (district courts have an "independent obligation to address [subject-matter jurisdiction] *sua sponte*" (internal quotation marks omitted)))).

**A. The Court must be satisfied that the parties are properly aligned before determining it has subject matter jurisdiction.**

"[F]ederal courts are required to realign the parties in an action to reflect their interests in the litigation. The parties themselves cannot confer diversity jurisdiction upon the federal courts by their own designation of plaintiffs and defendants." *City of Vestavia Hills v. General Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) (citing *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941)). "Rather it is the 'duty . . . of the lower federal courts[ ] to look beyond the pleadings and arrange the parties according to their sides in the dispute,'" *id.* at 1313-14 (quoting *Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 16 n.5 (1989) (citations and quotations omitted)), "as determined by 'the principal purpose of the suit' and 'the primary and controlling matter in dispute,'" *id.* at 1314 (quoting *City of Indianapolis*, 314 U.S. at 69); *accord Cromwell v. Admiral Ins. Co.*, Civil Action No. 11–0155–CG–N, 2011 WL 2670098, at *4 (S.D. Ala. June 21, 2011) ("In

addressing the proper alignment of the parties, the court must consider 'the principal purpose of the suit and the primary and controlling matter in dispute.'" (quoting *Indemnity Ins. Co. of N. Am. v. First Nat'l Bank at Winter Park, Fla.*, 351 F.2d 519, 522 (5th Cir. 1965)), *report and recommendation adopted*, 2011 WL 2689356 (S.D. Ala. July 7, 2011).[5]

"Where the parties' interests are the same, [the Eleventh Circuit has] held that those parties must be aligned together and [has] reversed a district court's failure to do so, even where the parties' interests were in opposition outside of the issues raised in the subject action." *City of Vestavia Hills*, 676 F.3d at 1314 (citing *Weller v. Navigator Marine, Inc.*, 737 F.2d 1547, 1548 (11th Cir. 1984) (per curiam); *Development Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 160 (3d Cir. 1995) ("'[W]here party designations have jurisdictional consequences,' [the court] must align the parties before determining jurisdiction." (quoting *In re Texas*

---

[5] "The determination of the 'primary and controlling matter in dispute' . . . is to be determined by ***plaintiff's principal purpose for filing its suit***." *Zurn Indus., Inc. v. Acton Constr. Co., Inc.*, 847 F.2d 234, 237 (5th Cir. 1988) (emphasis added) (cited in *Federal Ins. Co. v. Bill Harbet Constr. Co.*, 82 F. Supp. 2d 1331, 1337 & n.5 (S.D. Ala. 1999) (Vollmer, J.) (examining *Weller* to conclude, "In sum, this circuit looks to the principal purpose of the lawsuit when determining whether the parties are properly aligned.")); *see also Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 497 Fed. App'x 313, 316 (4th Cir. Nov. 20, 2012) (per curiam) ("To determine when to realign parties, we apply the two-step 'principal purpose' test. First, we determine the primary issue in the controversy by considering the 'plaintiff's principal purpose for filing its suit.' *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008) (internal quotation marks omitted). Second, 'we align the parties according to their positions with respect to the primary issue.' *Id.* If the alignment differs from that in plaintiff's complaint, we look to whether diversity jurisdiction still exists." (some internal citation omitted)).

*E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1241 (3d Cir. 1994)))).[6]

How RBX is aligned in this lawsuit clearly has "jurisdictional consequences." Because Fergerson and RBX are both citizens of Missouri, realignment of RBX as a party plaintiff destroys the bedrock requirement that, for a federal court to have jurisdiction pursuant to diversity, all plaintiffs must be diverse from all defendants. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *Avirex*, 745 F. Supp. at 689 ("Where federal jurisdiction rests on diversity, diversity must be complete between the parties." (citing *Standard Oil Co. of Tex. v. J.W. Marshall*, 265 F.2d 46 (5th Cir. 1959))).[7]

---

[6] *See also Avirex, Ltd. v. Hialeah Indus., Inc.*, 745 F. Supp. 688, 689-90 (S.D. Fla. 1990) (in which the court summarized *Weller*—there, "the plaintiff and two of the three defendants had the identical interest in seeing that an option contract entered into between the plaintiff and one of the three defendants was invalidated by the court. Since the plaintiff and two of the three defendants were all residents of Florida, the Court found that the case should properly be aligned to reflect that they were on the same side of the dispute. That conclusion was upon the identical interests of the plaintiff and two of the defendants. The court found the District Court had no jurisdiction to resolve what should properly be resolved in a state court action."—and applied "the *Weller* standard" to grant a motion to dismiss for want of jurisdiction where plaintiff and remaining defendant had "the same interest in finding [a warehouse owner] negligent in its maintenance of the fire prevention system").

[7] That said, the undersigned recognizes that FirstFleet and Tennessee American, whose principal place of business is Knoxville, Tennessee (*compare* Doc. 1, ¶ 4, *with* Doc. 6, ¶ 4), are both corporate citizens of Tennessee, *see, e.g.*, *Auto-Owners Ins. Co. v. Great Am. Ins. Co.*, 479 Fed. App'x 228, 232 n.3 (11th Cir. June 21, 2012) (per curiam) ("For the purposes of diversity jurisdiction, 'a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated ***and*** of the State . . . where it has its principal place of business.'" (quoting 28 U.S.C. § 1332(c)(1) (emphasis added)). However, as Tennessee American has made clear through its filings in this case (or lack thereof), it appears that it is neither adverse to FirstFleet nor necessarily aligned with it as to Great West's principal purpose for filing this action (to disclaim coverage for FirstFleet under its policy with RBX). *See Builders Mut. Ins.*, 497 Fed. App'x at 316 (first step in determining whether to realign parties is establishing the primary issue in the litigation, as framed by the plaintiff's principal purpose for filing its lawsuit). As explained below, the other parties

In addressing the proper alignment of the parties, RBX contends it should be aligned with Fergerson; Great West, in a possible attempt to skirt the issue, questions the continued necessity of RBX to its declaratory judgment action; and FirstFleet argues that RBX's continued presence is essential to fully adjudicate the declaratory relief Great West seeks. Specifically, RBX asserts that

> its interests in this action are aligned with . . . Fergerson and there is complete diversity in this case. FirstFleet and RBX are both defendants in the Fergerson[s'] underlying lawsuit[,] and RBX believes Fergerson would prefer that both RBX and Firs[t]Fleet (which RBX understands has its own separate insurance coverage) remain potentially [ ] liable to Fergerson. That will not be the case if this Court finds RBX is required to indemnify FirstFleet.

(Doc. 55 at 1.) Great West contends, however, that, at least when it filed this lawsuit, it anticipated that RBX could take a position adverse to it, and, since RBX has not taken such a position, it is now clear that RBX is misjoined and should be dropped as a party. (*See* Doc. 54 at 3-5.)[8] As to FirstFleet, it stakes the position

---

in this case are all interested in the outcome of this coverage action—Great West's, RBX's, and Fergerson's interests are aligned against FirstFleet's. As to Tennessee American, however, colloquially speaking, it does not have a dog in this fight. Therefore, it can remain aligned with FirstFleet as a defendant for jurisdictional purposes. *Cf. Liddy v. Urbanek*, 707 F.2d 1222, 1224-25 (11th Cir. 1983) (a stockholder derivative suit, in which the Eleventh Circuit noted, "[t]he question of whether to realign [parties] is 'a ***practical*** not a mechanical determination and is ***resolved by the pleadings and the nature of the dispute***,'" before determining that—because, there, the record indicated that a plaintiff stockholder exercised control over the corporation—"it [was] blatantly inconsistent for [that stockholder] to urge us now to align the corporation against him in federal court simply to preserve jurisdiction" (quoting *Smith v. Sperling*, 354 U.S. 91, 97 (1957) (emphasis added))).

[8] Great West provides,

> "[O]n the key issue raised in this declaratory judgment action [whether FirstFleet is covered by the Great West policy], RBX admits that FirstFleet is not a named insured and is not an additional insured. . . . [W]hen [Great West] filed this lawsuit, [***however,***] it anticipated that RBX might seek coverage for FirstFleet, or might believe that its interests would best be served if coverage for FirstFleet existed. It is for this reason that [Great

that RBX is neither misjoined nor indispensable: "[R]ather than directly address the question of realignment, Great West now confesses that it has misjoined RBX as a defendant—a mistake that it contends is easily corrected by the dismissal of RBX. Given the issues involved, however, RBX's presence in this lawsuit is necessary, and its dismissal should not be permitted." (Doc. 60 at 2.)

As to the potentially related issue of the relevance of the agreement between FirstFleet and RBX, RBX punts (*see* Doc. 55 at 2)[9]; Great West contends that the

---

> West] named RBX as a defendant. It is now apparent, however, that RBX does not believe that First Fleet has rights under the [Great West] policy, just as RBX also takes the view that it does not owe indemnity to FirstFleet, much less did it agree to purchase insurance for FirstFleet's benefit.
>
> In this regard, it is now apparent RBX was misjoined as a defendant by [Great West]. . . .
>
> RBX is not now properly joined as a defendant under [Rule] 20(a)(2)(A), because no right to relief is asserted against RBX by [Great West] in connection with the insurance policy issued by [Great West] to RBX. Just as clearly, RBX is not an indispensable party under [Rule] 19, since the Court can accord complete relief among the parties (that is, GWCC and FirstFleet/Fergerson) without the presence of RBX. RBX claims no interest in the matter as demonstrated by its pleading herein, hence its absence from the lawsuit will not prevent this Court from doing complete justice as between Plaintiff and the remaining defendants, FirstFleet and Fergerson. For this reason, too, RBX ought not be realigned (and thus joined) as a plaintiff, because it does not seek a declaration of its rights under its policy vis-à-vis FirstFleet. *See* [FED. R. CIV. P.] 20(a)(1)(A).
>
> Under [Rule] 21, misjoinder of [ ] parties is not a ground for dismissal of an action. Under the circumstance, [Great West] suggests to this Court that this submission be treated as a motion by [Great West] to drop RBX as a party from this action. Alternatively, [Great West] requests that the Court treat this submission as an invitation to the Court, on its own motion, to drop RBX as a party to this action.

(*Id.* at 3-4.)

[9] RBX's position is, in its entirety, "This is Great West's action[,] and RBX will allow Great West to brief the scope of relief it is seeking. That said, it should be noted that Great West is not a party to the underlying lawsuit. Great West should have the ability to

enforceability of that agreement "is not an issue raised by [it] in the declaratory judgment action" (Doc. 54 at 7 (emphasis in original))[10]; and, not surprisingly, FirstFleet argues that determining whether its agreement with RBX is an "insured contract" under the Great West policy is essential to determining whether FirstFleet is covered by the policy (*see* Doc. 60 at 4-6).

**B. RBX has chosen to align with its insurer, Great West, against FirstFleet. Fergerson's indisputable interest for purposes of this action is to maximize the insurance coverage available to him in the state-action, which aligns him against FirstFleet here. Therefore, both Missouri citizens are aligned together, and complete diversity is preserved.**

With regard to realignment, this Court must ensure that parties to this lawsuit with the same interests are "aligned together . . . , even [if] the parties' interests ***were***[, ***are***, or ***could be***] in opposition ***outside*** of the issues raised in the subject action." *City of Vestavia Hills*, 676 F.3d at 1314 (citing *Weller*, 737 F.2d at

---

resolve its coverage dispute with FirstFleet[,] and this Court is the proper forum under the Federal Declaratory Judgment Act." (*Id.*)

[10] Great West explains it "filed the declaratory judgment action [because,] while FirstFleet claims only indemnity and failure to get insurance as against RBX in the underlying action, [its counsel] nevertheless also specifically claimed that FirstFleet has rights directly against [Great West] as an insured under the [ ] policy." (*Id.*) Great West goes on, "Obviously, [this] claim . . . will not be adjudicated [in the state-court action], because [Great West] is not a party there, and the [Great West] contract is not at issue there.

> Yet, FirstFleet contends . . . that it has rights directly under the [ ] policy to the extent that RBX (as [the] named insured) entered into an "insured contract" with FirstFleet. That issue[, Great West contends,] ***depends on the language of the policy, [not on any "insured contract,"]*** which is not raised, and therefore will not be resolved in the underlying case. If FirstFleet chooses to argue that the "insured contract" language of the[ ] policy somehow operates to make FirstFleet a[n] insured, the issue will be joined. . . .

(*Id.* at 7-8 (emphasis added).)

1548) (emphasis added). In *Vestavia Hills*, a declaratory-judgment action filed after entry of a state-court judgment and removed to federal court, the realigned parties' interests were in opposition ***before*** the state-court judgment.[11] In *Weller*, where Defendant Navigator was a Florida citizen, the district court denied a motion for realignment and dismissal after it found that two defendants—Corzilius, a Florida citizen, and Martini—should not be realigned as plaintiffs, concluding "Corzilius and Martini were adverse to Weller because, in the event that Weller should not prevail, Corzilius and Martini would have an action against him for breach of contract." 737 F.2d at 1548-49. The Eleventh Circuit vacated and reversed, observing, "Although the district judge was correct in noting that Corzilius and Martini ***would*** have an action against Weller ***should*** Navigator prevail, this does not indicate that the position of Corzilius and Martini was not substantially identical to that of Weller ***in the suit before the court***." *Id.* at 1549 (emphasis

[11] There, the City obtained a state-court judgment against Cameron Development (and after Cameron's insurer, General Fidelity, denied Cameron's claim for coverage), the City filed an action in state court against Cameron (an Alabama citizen) and General Fidelity (not a citizen of Alabama). General Fidelity removed the action to federal court; the district court determined that, because their interests were the same, Cameron should be realigned as a plaintiff with the City; and the Eleventh Circuit affirmed that decision:

> Having reviewed the single-count complaint, it is clear that Vestavia Hills did not seek any relief from Cameron. *Cf. Duffey v. Wheeler*, 820 F.2d 1161 (11th Cir. 1987). There no longer is any dispute between Vestavia Hills and Cameron, and the only thing that Cameron could want out of this case is for Vestavia Hills to win. Obviously, the two parties' interests are identical or at least materially so. As was noted by the Seventh Circuit in *Home Insurance Co. of Illinois v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998), in determining subject matter jurisdiction on the basis of diversity, "the normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party."

*Id.* at 1314 (footnote omitted).

added). Thus, here, the parties' interests should be aligned around the narrow issue this case presents: whether FirstFleet has coverage under the Great West-RBX policy. While that fight is primarily between Great West and FirstFleet, what matters for jurisdictional purposes is where the two Missouri citizens—RBX and Fergerson—line-up. If, for purposes of "the suit before the court[,]" *Weller*, 737 F.2d at 1549, their interests are aligned—meaning they appear on the same side of the *"v."*—there is complete diversity, and this Court has subject matter jurisdiction.

Fergerson is not a party to the insurance policy at issue, and he has failed to respond to the Court's inquiry regarding realignment, but his interests for purposes of this suit appear straightforward: maximizing the insurance coverage available to him in his state-court action. *See, e.g., Brave Ventures, LLC v. Ambrester*, 854 F. Supp. 2d 356, 358 (E.D. Va. 2012) (realigning state-action plaintiff/federal defendant as federal plaintiff in a pure declaratory judgment action filed prior to judgment in the underlying state action: "Ambrester is not a party to the insurance agreement and has no potential duties under the insurance policy itself. As a plaintiff in a separate tort suit in state court, his sole interest in this action would be maximizing his potential recovery, and therefore establishing coverage under any and all insurance policies that could potentially compensate him, if he prevails in his lawsuit."). And, as both RBX and FirstFleet point out, if Great West prevails in this suit—that is, it is determined that FirstFleet does not have coverage under the policy—Fergerson benefits. (*See* Doc. 55, RBX's response to realignment inquiry, at 1 ("FirstFleet and RBX are both defendants in the Fergerson[s']

underlying lawsuit[,] and RBX believes Fergerson would prefer that both RBX and Firs[t]Fleet (which RBX understands has its own separate insurance coverage) remain potentially [ ] liable to Fergerson. That will not be the case if this Court finds RBX is required to indemnify FirstFleet."); Doc. 60, FirstFleet's response to realignment inquiry, at 2 ("[S]hould FirstFleet have coverage under the Great West policy, any losses paid by Great West on FirstFleet's behalf would reduce the policy limits available to RBX for the Fergerson claim, and visa versa.").)

While it may be generally true "the normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party[,]" *Home Ins. Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998) (cited in *City of Vestavia Hills*, 676 F.3d at 1314), a court must nevertheless examine the declaration(s) being sought, and where, like here, the amount of insurance coverage available is at issue, a court should align the parties seeking to maximize coverage together. *See, e.g., Baldwin County Bd. of Educ. v. Melvin Pierce Painting, Inc.*, Civil Action No. 11–00558–KD–M, 2012 WL 124844, at *3 (S.D. Ala. Jan. 17, 2012) (DuBose, J.) ("[T]he primary purpose of this litigation is to determine whether FCCI must provide coverage, and if so, the amount of coverage available to satisfy the $1.5 million dollar judgment against Pierce. Since Pierce sought indemnification and a defense, which FCCI initially denied, and Pierce then challenged FCCI's decision, it is clear that Pierce too is interested in having FCCI pay all of the judgment or as much as possible to reduce its liability. . . ."); *Cromwell*, 2011 WL 2670098, at *6 ("[T]he primary thrust of the current litigation

will be the issue of the amount [and potentially the existence] of coverage. Despite plaintiff's claim that defendant SafetyNet takes an adverse position to the plaintiff because it seeks continued defense [and thus continued expenses reducing the available policy proceeds] by Admiral in the state court litigation, it is clear that SafetyNet's principal interest in this suit is in having Admiral pay as large a portion of the judgment as possible, thereby reducing the unsatisfied remainder of the judgment for which SafetyNet would remain liable. . . . Based on the record, the undersigned concludes that the interests of SafetyNet are properly aligned in this litigation with those of the plaintiff. . . ."); *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 209-11 (3d Cir. 1997) (noting district court's realignment of defendant trucking company and defendant driver with plaintiffs—representatives of the estates of three deceased motorcyclists—against insurance company, in an action seeking "a declaration that the incident which occurred on June 17, 1990, constituted three separate accidents, and therefore the available liability insurance coverage would be $2,250,000 and not the $750,000 available for a single accident[,]" even though "the realignment destroyed diversity of citizenship" and required dismissal); *accord Brave Ventures*, 854 F. Supp. 2d at 358.

Therefore, because the two Missouri citizens, RBX and Fergerson, should be aligned together, complete diversity exists, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Since the undersigned is satisfied that complete diversity exists, it is therefore not necessary to undertake the potentially cumbersome analysis required to determine whether RBX should be dismissed

pursuant to Rule 21. As such, it is **RECOMMENDED** that the Court **DECLINE** Great West's invitation to drop/dismiss RBX (*see generally* Doc. 54).[12]

[12] "Misjoinder is not a ground for dismissing an action[,]" but "the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21; *see also Scottsdale Ins. Co. v. Subscriptions Plus, Inc.*, 195 F.R.D. 640, 643 (W.D. Wis. 2000) ("Rule 21 empowers federal courts to add parties, 'drop' (that is, dismiss) parties and sever claims. Nominally, the rule applies only to the 'misjoinder' and 'non-joinder' of parties; however, it is also used in the absence of misjoinder and non-joinder to dismiss nondiverse, dispensable parties to cure a lack of diversity subject matter jurisdiction and preserve as much of a case as is properly before the court." (citing *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830 (1989); *Bhatla v. U.S. Capital Corp.*, 990 F.2d 780, 786 (3d Cir.1993))). Determination of whether RBX can be "dismissed" pursuant to Rule 21 without dismissing the lawsuit turns on whether RBX is an indispensable party under Rule 19(b). *See, e.g., Scottsdale*, 195 F.R.D. at 644 ("Although 'misjoinder of parties is not grounds for dismissal of an action,' [Rule 21], if a dismissed party is determined to be 'indispensable' under Rule 19(b), then the action must be dismissed." (citing *Newman–Green*, 490 U.S. at 830)); *IMTEC Corp. v. Moore*, 250 F.R.D. 647, 651-52 (E.D. Okla. 2008) ("Because Jakson is likewise an indispensable party, the undersigned Magistrate Judge concludes that this action should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(7)." (citations omitted)). "Contrary to [any] blanket assertion that all insured are always indispensable parties [(*see, e.g.,* Doc. 60, FirstFleet's response to realignment inquiry, at 2 ("It would be a rare insurance cases, indeed, where the named insured was not a party . . . .).)], courts have held in a variety of circumstances that not all insured must be joined in a declaratory judgment action." *In re Chinese Mfd. Drywall Prods. Liab. Litig.*, 273 F.R.D. 380, 390-91 (E.D. La. 2011) (citations omitted; first noting that "[t]he question of joinder of parties under Rule 19 has arisen in a variety of cases involving insurance claims that defy generalization." (quoting 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KAYNE, ET AL., FEDERAL PRACTICE & PROCEDURE, § 1619 (3d ed.))).

Indeed, if RBX can show that it meets none of the three tests for finding a party necessary to a proceeding under Rule 19(a), it will prove that it is not an indispensable party under Rule 19(b). *Compare Scottsdale*, 195 F.R.D. at 646 ("Because defendant Progressive is not a necessary party within the meaning of Rule 19(a), by definition it cannot be an indispensable party within the meaning of Rule 19(b). [Accordingly,] its nondiverse status does not deprive the court of jurisdiction and does not mandate that the case be dismissed pursuant to Rule 19(b)."), *with Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*, 842 F. Supp. 2d 1360, 1364 (N.D. Ga. 2012) ("Rule 19 states a two-part test for determining whether a party is indispensable. First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." (quoting *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982))). Under Rule 19(a), "[t]he first question [19(a)(1)] focuses on the harm to the public of proceeding in the party's absence; the second [19(a)(2)(i)], on the harm to the absent

### C. This Court has very recently provided ample guidance as to how the pending motion to dismiss should be considered.

Since January 2011, this Court has addressed *Wilton/Brillhart* Abstention, as guided by the Eleventh Circuit's decision in *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), at least five times. *E.g., Essex Ins. Co. v. Foley*, Civil Action No. 10–0511–WS–M, 2011 WL 290423 (S.D. Ala. Jan. 27, 2011) (Steele, J.); *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. King*, Civil Action No. 11–0577–WS–C, 2012 WL 280656 (S.D. Ala. Jan. 30, 2012) (Steele, J.); *New Hampshire Ins. Co. v. Hill*, Civil Action No. 11–0414–CG–B, 2012 WL 1598155 (S.D. Ala. May 7, 2012) (Granade, J.); *QBE Ins. Corp. v. Whispering Pines Cemetery, LLC*, Civil Action No. 12–0054–KD–C, 2012 WL 4435302 (S.D. Ala. Sept. 26, 2012) (DuBose, J.); *State Farm Fire & Cas. Co. v. Johnson*, Civil Action No. 12–00358–KD–N, 2012 WL 6680306 (S.D. Ala. Nov. 9, 2012) (Nelson, M.J.), *report and recommendation adopted*, 2012 WL 6677906 (S.D. Ala. Dec. 21, 2012).

As this Court stated in *Pennsylvania National*,

---

party; and the third [19(a)(2)(ii)], on the harm to the extant parties. An absentee whose nonjoinder results in ***any*** of these three problems identified by the Rule is necessary." *Id.* at 645 (citation and quotation marks omitted and emphasis in original). Great West has omitted any discussion of the necessary status of its insured, RBX, pursuant to Rule 19(a), in its "invitation" to dismiss RBX under Rule 21. This is fatal to Great West's attempt to show that RBX is not an indispensable party, and, therefore, show that RBX alone should be dismissed pursuant to Rule 19(a), but that the lawsuit itself is not subject to dismissal under Rule 12(b)(7).

It finally should be noted that at least one court has found that a plaintiff who later believes that a party it named as a defendant is misjoined, such as Great West here, cannot move to dismiss that party, "not joined pursuant to Rule 19[.]" *See Lane v. Birnbaum*, 910 F. Supp. 123, 129 n.9 (S.D.N.Y. 1995) (acknowledging that Rule 19(b) "allow[s] the Court, under certain circumstances . . . to dismiss a party who is necessary but not indispensable if that party's joinder would destroy diversity jurisdiction[,]" but that that Rule cannot be utilized by a plaintiff who added the allegedly misjoined party to the action).

It is well-settled that the Declaratory Judgment Act is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (citations omitted). As the Eleventh Circuit has observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas*, 411 F.3d at 1330; *see also Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 789 (8th Cir. 1998) ("the Supreme Court's decision in *Wilton* . . . vests the district courts with broad discretion in deciding whether to hear a declaratory judgment action"). In determining how to exercise that discretion, it bears noting that "[t]he desire of insurance companies . . . to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Westchester Surplus Lines Ins. Co. v. Romar House Ass'n, Inc.*, Civil Action No. 08-0455-WS-M, 2008 WL 5412937, at *2 (S.D. Ala. Dec. 29, 2008) (quoting *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3rd Cir. 2000)).

Seven decades ago, the Supreme Court opined that it would be both "uneconomical" and "vexatious" for a federal district court to hear a declaratory judgment action, concurrently with ongoing proceedings involving the same parties and same legal issues (not arising under federal law) in state court. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). *Brillhart* admonished lower courts scrupulously to avoid "[g]ratuitous interference with the orderly and comprehensive dis-position of a state court litigation." *Id.* In the wake of *Brillhart*, courts recognize that they have discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven–Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982); *see also Federal Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1247 (11th Cir. 2000) ("A court may exercise its discretion to dismiss a declaratory judgment action in favor of a pending state court proceeding that will resolve the same state law issues.").

In *Ameritas*, the Eleventh Circuit furnished district courts with guidance in how to wield their *Wilton*/*Brillhart* discretion under the Declaratory Judgment Act in the presence of parallel state proceedings. *Ameritas* emphasized that district courts must balance the interests of federalism, comity, and efficiency in determining whether to hear a declaratory judgment action in those circumstances,

> and promulgated a non-exhaustive set of nine "guideposts" to be considered. 411 F.3d at 1330–31.[13]

2012 WL 280656, at *2-3 & n.3 (some citations modified).

**D. Great West requests that this Court declare rights as to a duty to defend and a separate duty to indemnify. Because FirstFleet has raised the ripeness of the duty to indemnify in its motion, the Court shall analyze each duty separately.**[14]

In conjunction with finding no coverage or no potential coverage for FirstFleet under the policy's Commercial Auto Part, Great West requests this Court declare "Great West owes no duty to defend ***or*** indemnify FirstFleet with respect to the underlying [state-court] action." (Doc. 1, ¶¶ 27, 33 (emphasis added).) To be certain, "[u]nder Alabama law, an insurer's duty to indemnify and its duty to defend the insured are distinct obligations." *W.G. Yates & Sons Constr. Co. v. Zurich Am. Ins. Co.*, Civil Action No. 06-0803-WS-B, 2008 WL 161921, at *6 (S.D. Ala. Jan. 8,

---

[13] Those guideposts are as follows: "(i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action is a form of procedural fencing being utilized to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case not otherwise removable; (v) whether a ruling in the declaratory judgment action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory judgment action." *Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1234 (S.D. Ala. 2006) (citation and internal quotation marks omitted).

[14] Had FirstFleet not raised ripeness in its principal brief, or—had ripeness been raised in an opposition—FirstFleet not addressed it on reply, the undersigned would not consider it now. *See, e.g., Essex Ins.*, 2011 WL 290423, at *2 n.2. ("This ground for stay[—ripeness of a duty to defend—]is not found in movant's principal brief, nor does it respond directly to arguments presented by Essex's opposition brief; rather, it constitutes an entirely new and distinct legal issue. Because it is improper for a litigant to inject such new arguments in a reply brief, the Court will not consider it here." (collecting cases)).

2008) (Steele, J.) (citing *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003) ("Liability insurance coverage includes two separate duties: (1) the duty to defend; and (2) the duty to indemnify.")). "Those duties must be analyzed separately for purposes of determining an insurer's obligations to its insured." *Id.*

**1. Here, the state court has not ruled on liability; as such, a declaration as to any duty to indemnify is not yet ripe, and that component of the case should be stayed.**

Because "[t]here is abundant support in the case law for the proposition that 'an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit[,]'" *W.G. Yates & Sons*, 2008 WL 161921, at *6-7 (S.D. Ala. Jan. 8, 2008) (quoting *Assurance Co. of Am. v. Legendary Home Builders, Inc.*, 305 F. Supp. 2d 1266, 1270 (S.D. Ala. 2003) and collecting authority), those duties must also be analyzed separately under *Wilton/Brillhart/Ameritas*. For example, again in *Pennsylvania National*, after denying Baldwin County's motion to dismiss as to that declaratory judgment action's "duty-to-defend component[,]" 2012 WL 280656, at *5, the Court addressed the ripeness of the duty to indemnify:

> Penn National's duty-to-indemnify claims are on a different footing. In particular, plaintiff is requesting adjudication of whether it must indemnify Treasure Coast or the County for any adverse judgment entered against them in the *King* Litigation, even though[—***like here***—]no such judgment has been entered to date. Case law is legion for the proposition that an insurer's duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has been held liable in the underlying action. Plaintiff does not, and cannot, dispute that the duty-to-indemnify issue joined in this action is not yet ripe because there has been no liability determination in the underlying suit.

*Id.* (internal citations omitted); *compare id.*, *with* Docs. 30, motion, at 7 & 9; 37, RBX's response; 39, Great West's response; *and* 40, reply, at 6 (FirstFleet raises the ripeness of the duty to indemnify in its motion (and again on reply), but RBX and Great West fail to address this issue).

Opinions differ as to whether the not-yet-ripe-duty-to-defend component of a declaratory judgment actions should be stayed or dismissed, *see* 2012 WL 280656, at *5, but the undersigned agrees with the approach Judge Steele took in *Pennsylvania National* and **RECOMMENDS** that Great West's duty-to-indemnify claims be **STAYED**. In *Pennsylvania National*, this Court adopted the approach taken in *Employers Mutual Casualty Co. v. Evans*, 76 F. Supp. 2d 1257 (N.D. Ala. 1999), where

> the court elected to "retain jurisdiction to hear both the duty to defend and the indemnification issues. . . . If the court determines that there is a duty to defend, it may well be appropriate not to then reach the further issue of indemnity. However, a determination that there is no duty to defend may well determine the duty to indemnify issue. Both discretion and common sense mandate that the court retain jurisdiction at least until the duty to defend issue is determined. . . ."

2012 WL 280656, at *5 (quoting 76 F. Supp. 2d at 1262 and citing, among other authority, *Atlantic Cas. Ins. Co. v. GMC Concrete Co.*, Civil Action No. 07-0563-WS-B, 2007 WL 4335499, at *6 (S.D. Ala. Dec. 7, 2007) ("The duty to indemnify issue will remain part of the case, but will not be considered . . . until the earlier of (a) final disposition of the [underlying] Action; or (b) a ruling on the duty to defend, at which time the Court will entertain any motion that the parties may wish to file concerning the duty to indemnify claims.")).

**2. The request that Great West's duty-to-defend claims be dismissed or, alternatively, stayed should be denied.**

Although FirstFleet's motion is based on the nine nonexhaustive *Ameritas* guideposts, that analysis generally applies ***only*** "where there is 'parallel litigation in the state court.'" *Essex Ins.*, 2011 WL 290423, at *2 (quoting *Ameritas*, 411 F.3d at 1331); *see id.* ("An important threshold question is whether *Ameritas* even applies in this case. After all, the Supreme Court in *Brillhart* addressed the circumstance 'where another suit is pending in a state court presenting the ***same issues***, not governed by federal law, between the ***same parties***.'" (quoting *Brillhart*, 316 U.S. at 495) (emphasis added by *Essex* Court)); *accord State Farm*, 2012 WL 6680306, at *4; *QBE Ins.*, 2012 WL 4435302, at *3; *Pennsylvania Nat'l*, 2012 WL 280656, at *4.

This action is not parallel to the action proceeding in Wilcox County Circuit Court. First, Great West is not a party to that action. Second, in that action, FirstFleet has asserted a cross-claim that (1) alleges Great West's insured, RBX, owes FirstFleet a defense and indemnity, pursuant to an agreement between the two; (2) alleges FirstFleet is entitled to common law indemnity from RBX; (3) alleges RBX was negligent; and (4) requests the state court declare that, "pursuant to the [agreement between RBX and FirstFleet], RBX is required "to indemnify, defend and hold harmless" FirstFleet "for all defense and litigation costs and all liability arising out of the [state-court action]." (*See generally* Doc. 30-4.) But no coverage issues, pursuant to the policy at issue in this matter, have been joined there. Thus, the Circuit Court will not determine whether FirstFleet is covered by the policy and, as such, whether Great West owes a duty to defend or indemnify

FirstFleet. "In short, what we have here are not parallel state court proceedings, but merely related state court proceedings. 'In such circumstances, courts have shown marked reluctance to exercise their discretion to stay or dismiss the declaratory judgment action.'" *State Farm*, 2012 WL 6680306, at *5 (quoting *Essex Ins.*, 2011 WL 290423, at *2 (quoting, in turn, *State Farm Fire & Cas. Co. v. Knight*, Civil Action No. 09-0783-WS-B, 2010 WL 551262, at *3 (S.D. Ala. Feb. 11, 2010))); *see also New Hampshire Ins.*, 2012 WL 1598155, at *1-3.[15] This alone should require that the Court deny FirstFleet's motion as to the duty-to-defend claims.

---

[15] In that case, also an insurance coverage declaratory judgment action with a ***related***, but not parallel, state-court action, this Court noted that

> in declaratory judgment actions, the lack of a parallel state court proceeding does not necessarily mean that abstention should be denied. The standard for abstention is different in declaratory judgment cases than it is in "coercive" cases. Federal courts are more likely to abstain from hearing a declaratory judgment action based on the standards articulated in *Brillhart*[,] *Wilton*[,] and their progeny than they are to abstain from hearing a coercive action based on the standards set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and its progeny. Under *Colorado River,* a district court may dismiss or stay an action where there is an ongoing parallel action in state court only in "exceptional circumstances." *See Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004).
>
> . . .
>
> [But, e]ven with the less restrictive standard for abstention, some courts have declined to abate a declaratory judgment action in favor of a state proceeding where the parties and issues in the federal suit are not parallel to those in the state court case.
>
> . . .
>
> [And o]ther courts have found that where the underlying litigation is ***not parallel, but merely related,*** abstention may still be appropriate and an analysis of the factors set forth in *Ameritas* is warranted. ***However,*** in such circumstances, courts have shown ***marked reluctance*** to exercise their discretion to stay or dismiss the declaratory judgment action.

But, even if the *Ameritas* analysis is performed, the result is no different. FirstFleet's motion as to the duty-to-defend claims still should be denied. First, even if it were before the state court, Alabama would have little, if no, interest in deciding whether FirstFleet, a citizen of Tennessee, is covered under an insurance policy issued by Great West, a citizen of Nebraska. Second, this declaratory judgment action is of tremendous value to clarifying the legal relations between Great West and FirstFleet. (*Compare* Doc. 30 at 9 ("FirstFleet, Inc. does not deny that the issue raised in this suit serve[s] a useful purpose.").) Third, FirstFleet, the party who attempted to remove the underlying action, admits that "there is [no] overt evidence of 'procedural fencing' on behalf of Great West." (*Id.* at 9.) Fourth, "for this Court to decide [Great West's] duty to defend would neither increase friction between federal and state courts nor encroach on state-court turf[.]" *Essex Ins.*, 2012 WL 280656, at *4. Finally, there neither appears to be a superior alternative remedy to this lawsuit for determining, nor a court better situated than this one to determine, Great West's duty as to FirstFleet.

## III. Conclusion

Because complete diversity exists, which ensures that this Court has subject matter jurisdiction under § 1332, it is **RECOMMENDED** that the Court **DECLINE** Great West's invitation to drop/dismiss RBX (*see generally* Doc. 54).

It is **FURTHER RECOMMENDED** that FirstFleet's motion to dismiss, or alternatively, to stay (Doc. 30) be **GRANTED IN PART AND DENIED IN PART**.

---

*Id.* (multiple citations and quotation marks omitted and some emphases added).

Great West's duty-to-indemnify claims should be **STAYED** until the earlier of (1) final disposition of the underlying state-court litigation; or (2) a ruling on the duty to defend, at which time the Court will entertain any motion that the parties may wish to file concerning the duty-to-indemnify claims. And, as to the duty-to-defend claims, FirstFleet's motion should be **DENIED**.

## IV. Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 17th day of July, 2013.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**